**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| WYLIE HOLDINGS, L.P.,<br><br>Plaintiff,<br><br>v.<br><br>KRISTOFFER A. GARIN and JAMES H. ANDERSON,<br><br>Defendants. | Civil Action No. ______ |

## COMPLAINT

Plaintiff Wylie Holdings, L.P. ("Wylie" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against Defendants Kristoffer A. Garin ("Garin") and James H. Anderson ("Anderson," and together with Garin, the "Guarantors"), and alleges as follows:

## NATURE OF THE ACTION

1. This is an action to enforce a written personal guaranty dated January 30, 2025.

2. The Guarantors jointly and severally guaranteed the payment and performance of certain obligations owed to Wylie by Riparian Housing Investors I, LLC f/k/a Riparian Baltimore SFR Investors I, LLC (the "Company") under Sections 3 and 4 of a January 30, 2025, side letter.

3. The Company failed to pay the guaranteed obligations when due, failed to cure its default after notice, and the Guarantors failed to pay after receiving written notice of the default.

4. Wylie seeks judgment against the Guarantors, jointly and severally, for all unpaid Guaranteed Obligations, contractual interest, attorneys' fees, costs, expenses, and all other relief

available under the Guaranty and applicable law, while expressly reserving all other rights and remedies arising from the parties' related agreements and transactions.

## PARTIES

5. Wylie Holdings, L.P. is a Pennsylvania limited partnership.

6. Wylie's sole general partner is W. King Properties, Inc., which is a Pennsylvania corporation with a principal address of 3017 Boardwalk Ct., Glenshaw, Pennsylvania, 15116-2573/

7. For purposes of diversity jurisdiction, Wylie is a citizen of each state of which its general partner and limited partners are citizens. Joseph Edelstein and Ronald King are the only two limited partners, and each are Pennsylvania residents.

8. No general partner or limited partner of Wylie is a citizen of the same state as either Guarantor.

9. Garin is an adult individual who, in the Guaranty, identified his address as 1025 Cathedral Street, Baltimore, Maryland 21202.

10. Anderson is an adult individual who, in the Guaranty, identified his address as 1025 Cathedral Street, Baltimore, Maryland 21202.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.

12. This Court has personal jurisdiction over the Guarantors because the Guarantors agreed in the Guaranty that an action or proceeding against them may be commenced and maintained in Delaware or in the United States District Court in Wilmington, Delaware.

13. Venue is proper in this District because the Guarantors agreed in the Guaranty that an action or proceeding against them may be commenced and maintained in Delaware or in the United States District Court in Wilmington, Delaware, and the Guarantors thereby waived any objection to venue in this District.

14. The Guaranty is governed by Delaware law.

## FACTUAL ALLEGATIONS

### A. The Contribution Agreement and the Underlying Transaction

15. On or about February 27, 2024, Wylie and 3600 Penn Associates, LLC ("Penn," and together with Wylie, the "Contributors") entered into a Purchase and Sale and Contribution Agreement with the Company, as amended (the "Contribution Agreement").

16. The Contribution Agreement concerned the sale and contribution of a portfolio of individual parcels or lots of real property located in Pittsburgh, Pennsylvania. A true and correct copy of the Contribution Agreement is attached hereto as **Exhibit 1**.

17. Under the Contribution Agreement, Wylie and Penn were identified collectively as "Property Owner," and the Company was identified as "Company."

18. The Contribution Agreement contemplated, among other things, the sale and contribution of certain property interests by Wylie and Penn to the Company or its affiliates.

### B. The Closing Side Letter

19. On or about August 19, 2024, Wylie, Penn, the Company, and Baltimore SFR Manager, LLC, as Manager of the Company (the "Manager"), entered into a Side Letter for Contribution concerning Class B Contributor Convertible Units in the Company (the "Closing Side Letter").

20. The Closing Side Letter was entered into pursuant to the closing under the Contribution Agreement. A true and correct copy of the Closing Side Letter is attached hereto as **Exhibit 2**.

21. The Closing Side Letter provided for the issuance of 15,299 Class B Contributor Convertible Units in the Company to the Contributors.

22. The Closing Side Letter provided that the Company would pay quarterly a preferred return of ten percent (10%) per annum of the then-outstanding par value of the Contributors' Class B Contributor Convertible Units (the "Current Preferred Return").

23. The Closing Side Letter also provided that an additional preferred return of five percent (5%) per annum would accrue quarterly on the then-outstanding par value of the Contributors' Class B Contributor Convertible Units (the "Accrued Preferred Return," and together with the Current Preferred Return, the "Preferred Returns").

24. The Closing Side Letter provided rights concerning redemption of Class B Contributor Convertible Units and payment of Redemption Proceeds.

25. The Closing Side Letter defined certain failures by the Company as "Material Defaults."

26. Under Section 10 of the Closing Side Letter, upon a Material Default while Contributors hold Class B Contributor Convertible Units, which is not cured by the Company within sixty (60) days of written notice from the Contributors to the Company, the Contributors may exercise remedies set forth therein.

**C. The LLC Agreement**

27. The Company is governed by that certain Third Amended and Restated Limited Liability Company Operating Agreement of Riparian Housing Investors I, LLC, effective July 15,

2024, as it may be amended or supplemented from time to time (the "LLC Agreement"). A true and correct copy of the LLC Agreement is attached hereto as **Exhibit 3**.

28. The LLC Agreement recognizes "Class B Contributor Convertible Members" and "Class B Contributor Convertible Membership Units."

29. The LLC Agreement authorizes the Manager to enter into side letters on behalf of the Company, including Class B Contributor Convertible Side Letters with terms applicable to particular Class B Contributor Convertible Members.

30. The LLC Agreement provides that Class B Contributor Convertible Side Letters may provide for priority distributions to Class B Contributor Convertible Members while they hold Class B Contributor Convertible Units.

**D. The Holdings Class B Side Letter**

31. In connection with the broader transaction, Riparian Holdings, LLC ("Holdings") granted Class B Membership Units in Holdings to Wylie and Penn under a Side Letter for Grant of Class B Membership Units dated August 19, 2024 (the "Holdings Class B Side Letter").

32. Wylie does not presently assert a claim under the Holdings Class B Side Letter in this action, but the Holdings Class B Side Letter is part of the overall transaction background between the parties and related entities. A true and correct copy of the Holdings Class B Side Letter is attached hereto as **Exhibit 4**.

**E. The Seller Note and Additional Side Letter**

33. In connection with the closing under the Contribution Agreement, the Contributors provided certain financing to the Company's subsidiaries, referred to in the Additional Side Letter as the "Seller Take Back Financing."

34. That financing included a Promissory Note from WP Pittsburgh SFR Portfolio 3J, LLC in favor of Exeter Trust Company, as Trustee of Qualified Trust Account No. 624115931 FBO Wylie Holdings, LP, in the original principal amount of $4,689,408 (the "Seller Note").

35. The Seller Note was assumed by the Company pursuant to a Loan Assumption and Comprehensive Modification to Loan Documents dated as of September 30, 2024.

36. On or about January 30, 2025, Wylie, the Company, and the Manager entered into a Side Letter for Issuance of Additional Class B Contributor Convertible Units to Wylie (the "Additional Side Letter"). A true and correct copy of the Additional Side Letter is attached hereto as **Exhibit 5**.

37. The Additional Side Letter was entered into in connection with the payment and conversion of the remaining principal balance due under the Seller Note.

38. Section 1 of the Additional Side Letter states that the remaining principal balance due under the Seller Note was $1,373,134.66.

39. Section 1 of the Additional Side Letter states that the remaining principal balance was being converted to 1,848 additional Class B Contributor Convertible Units in the Company at $743 per unit (the "Additional Class B Units").

40. Section 1 of the Additional Side Letter states that accrued interest of $90,688.73 due under the Seller Note was being paid to the Lender on the same date and was not being converted into additional Class B Contributor Convertible Units.

41. Section 1 of the Additional Side Letter states that, upon issuance of the Additional Class B Units, the Seller Note would be deemed paid in full.

42. Except as set forth in the Additional Side Letter, all terms applicable to the Class B Contributor Convertible Units issued to Wylie at closing apply to the Additional Class B Units.

43. The Additional Side Letter states both that the remaining principal balance due under the Seller Note was $1,373,134.66 and that the balance was being converted into 1,848 Additional Class B Units at $743 per unit.

**F. The Special Distribution Obligation**

44. Section 3 of the Additional Side Letter requires the Company to make a special distribution of $475,000 to Wylie on March 31, 2026 (the "Special Distribution").

45. The Special Distribution is in addition to distributions otherwise due to Wylie for the Additional Class B Units.

46. Section 3 of the Additional Side Letter provides that failure by the Company to make the Special Distribution on or before March 31, 2026, constitutes a Material Default under the Closing Side Letter, subject to the notice and cure provisions set forth in the Closing Side Letter.

47. Section 3 of the Additional Side Letter provides that, until the Special Distribution is remitted to Wylie, the outstanding amount of the Special Distribution bears interest at five percent (5%) per annum.

48. The five percent (5%) interest on the Special Distribution is above and in addition to the current and carried interests associated with the Additional Class B Units.

49. Section 3 of the Additional Side Letter also requires payment of all reasonable third-party costs and expenses, including reasonable attorneys' fees, incurred by Wylie in connection with collection of the Special Distribution.

**G. The Redemption Obligation**

50. Section 4 of the Additional Side Letter requires the Company to redeem the Additional Class B Units within fifteen (15) days of the earlier of: (a) payoff in full or maturity of

the financing obtained from ARBOR REALTY SR, INC. at closing; and (b) August 19, 2026, unless Wylie waives the redemption by written notice to the Company on or before the applicable redemption deadline (the “Redemption Deadline”).

51. The redemption of the Additional Class B Units must include the current and carried interest associated with the Additional Class B Units.

52. Wylie has no obligation to waive redemption of the Additional Class B Units.

53. Section 4 of the Additional Side Letter provides that, if the Company does not redeem the Additional Class B Units on or before the Redemption Deadline and Wylie has not waived the redemption right in writing, that failure constitutes a Material Default under the Closing Side Letter.

54. Section 4 of the Additional Side Letter provides that the redemption proceeds bear interest at five percent (5%) per annum.

55. The five percent (5%) interest on the redemption proceeds is above and in addition to the current and carried interests associated with the Additional Class B Units.

56. Section 4 of the Additional Side Letter also requires payment of all reasonable third-party costs and expenses, including reasonable attorneys’ fees, incurred by Wylie in connection with enforcing redemption of the Additional Class B Units.

57. As of the filing of this Complaint, the Redemption Obligation has not been satisfied, and Wylie is owed, at minimum, the unpaid principal redemption amount of $1,373,064.00 for the Additional Class B Units (the “Redemption Principal”). The Redemption Principal is calculated by multiplying the 1,848 Additional Class B Units issued to Wylie under Section 1 of the Additional Side Letter by the $743 per-unit value stated in Section 1 of the Additional Side Letter.

58. In addition to the Redemption Principal, Section 4 of the Additional Side Letter requires the redemption of the Additional Class B Units to include the current and carried interest associated with the Additional Class B Units.

59. The Closing Side Letter provides that the Company shall pay a Current Preferred Return of ten percent (10%) per annum on the then-outstanding par value of the Class B Contributor Convertible Units and that an additional Accrued Preferred Return of five percent (5%) per annum shall accrue quarterly on the then-outstanding par value of those units.

60. Accordingly, the Current Preferred Return and Accrued Preferred Return associated with the Additional Class B Units accrue at a combined rate of fifteen percent (15%) per annum, or $564.27 per day, calculated as follows: $1,373,064.00 × 15% ÷ 365.

61. Section 4 of the Additional Side Letter further provides that, if the Company does not redeem the Additional Class B Units on or before the Redemption Deadline and Wylie has not waived the redemption right in writing, the unpaid redemption proceeds bear additional interest at five percent (5%) per annum, above and in addition to the current and carried interest associated with the Additional Class B Units, together with all reasonable third-party costs and expenses, including reasonable attorneys' fees, incurred by Wylie in connection with enforcing redemption. On the Redemption Principal alone, this additional five percent (5%) interest accrues at not less than $188.09 per day, calculated as follows: $1,373,064.00 × 5% ÷ 365.

**H. The Guaranty**

62. Section 3 of the Additional Side Letter required Garin and Anderson to execute and deliver a personal guaranty in the form attached to the Additional Side Letter as Schedule 2.

63. Garin and Anderson executed a Guaranty Agreement dated January 30, 2025, in favor and for the benefit of Wylie (the "Guaranty"). A true and correct copy of the Guaranty is attached hereto as **Exhibit 6**.

64. The Guaranty identifies Wylie as the "Contributor."

65. The Guaranty states that it was a material inducement for Wylie to enter into the Additional Side Letter.

66. In Section 2 of the Guaranty, the Guarantors absolutely and unconditionally guaranteed the full, prompt, complete, and faithful payment and performance by the Company of the obligations owed to Wylie under Sections 3 and 4 of the Additional Side Letter.

67. The obligations guaranteed under Section 2 of the Guaranty are referred to in the Guaranty as the "Guaranteed Obligations."

68. The Guaranty provides that, in the event of a default of the Guaranteed Obligations, which the Guaranty defines as an "Event of Default," the Guarantors must pay Wylie after receipt of written notice from or on behalf of Wylie that an Event of Default has occurred (an "Event of Default Notice").

69. The Guaranty requires the Guarantors to pay Wylie any and all unpaid Guaranteed Obligations (the "Unpaid Guaranteed Obligations").

70. The Guaranty also requires the Guarantors to pay all costs and expenses incurred by Wylie in connection with enforcement and preservation of Wylie's rights or remedies under the Guaranty, including court costs, actual and reasonable attorneys' fees and expenses, and the cost of all appeals (the "Expenses").

71. The Guaranty provides that, if the Guarantors fail to pay the Unpaid Guaranteed Obligations and Expenses immediately upon receipt of an Event of Default Notice, Wylie may institute and pursue an action or proceeding to judgment or final decree.

72. The Guaranty provides that neither demand on nor pursuit of remedies against the Company, any Guarantor, or any collateral is required as a condition precedent to Wylie proceeding against the Guarantors.

73. The Guaranty provides that the Guarantors' liability is absolute, primary, direct, and immediate.

74. The Guaranty provides that the Guarantors' liability is joint and several.

75. The Guaranty provides that the obligation to pay the Unpaid Guaranteed Obligations and Expenses is a guaranty of payment, not of collection.

76. The Guaranty provides that the Guarantors remain liable for Unpaid Guaranteed Obligations until those obligations are fully paid and/or performed.

77. The Guaranty contains a waiver of the Guarantors' right to demand a trial by jury in litigation arising out of, under, or in connection with the Guaranty or the transactions contemplated therein.

**I. The Company's Default and the Guarantors' Failure to Pay**

78. The Company failed to pay the Special Distribution to Wylie on or before March 31, 2026.

79. The unpaid Special Distribution is $475,000, plus interest at five percent (5%) per annum from March 31, 2026, until paid, plus recoverable costs, expenses, and attorneys' fees.

80. Interest due the unpaid Special Distribution accrues at $65.07 per day, calculated as follows: $475,000.00 × 5% ÷ 365.

81. On April 7, 2026, Wylie provided the Company with written notice of the Company's failure to pay the Special Distribution (the "Special Distribution Default Notice"). A true and correct copy of the Special Distribution Default Notice, together with proof of delivery, is attached hereto as **Exhibit 7**.

82. The Company failed to cure its failure to pay the Special Distribution within the applicable cure period under the Closing Side Letter.

83. The Company's failure to pay the Special Distribution, and its failure to cure that default, constituted a Material Default under the Closing Side Letter and an Event of Default under the Guaranty.

84. The Company failed to redeem the Additional Class B Units by the Redemption Deadline.

85. Wylie did not waive redemption of the Additional Class B Units in writing.

86. The Company failed to cure its failure to redeem the Additional Class B Units within the applicable cure period under the Closing Side Letter.

87. The Company's failure to redeem the Additional Class B Units, and its failure to cure that default, constituted a Material Default under the Closing Side Letter and an Event of Default under the Guaranty.

88. On April 7, 2026, Wylie sent an Event of Default Notice to the Guarantors. **See Exhibit 7**.

89. The Event of Default Notice advised the Guarantors that an Event of Default had occurred and demanded payment of the Unpaid Guaranteed Obligations and Expenses under the Guaranty.

90. The Guarantors failed to pay the Unpaid Guaranteed Obligations and Expenses immediately upon receipt of the Event of Default Notice.

91. The Guarantors remain jointly and severally liable to Wylie for the Unpaid Guaranteed Obligations and Expenses.

92. All conditions precedent to the Guarantors' liability under the Guaranty have occurred, been performed, or been waived.

93. The Additional Side Letter expressly requires the Company to pay all reasonable third-party costs and expenses, including reasonable attorneys' fees, incurred by Wylie in connection with collection of the Special Distribution and enforcement of redemption of the Additional Class B Units. The Guaranty separately requires the Guarantors to pay Wylie all costs and expenses incurred in connection with the enforcement and preservation of Wylie's rights or remedies under the Guaranty, including court costs, actual and reasonable attorneys' fees and expenses, and the cost of all appeals.

94. As of the filing of this Complaint, the Unpaid Guaranteed Obligations and Expenses total at least a minimum of $1,856,918.91, exclusive of interest, as well as other amounts consisting of and including the following:

a. Approximately $475,000.00 for the unpaid Special Distribution;

b. $10,15.75 in accrued interest on the unpaid Special Distribution, accruing at $65.07 per day from March 31, 2026, until paid;

c. $1,373,064.00 for the unpaid Redemption Principal, calculated as 1,848 Additional Class B Units multiplied by $743 per unit;

d. an amount to be determined in Current Preferred Return and Accrued Preferred Return associated with the Additional Class B Units, accruing at $564.27 per day, which began as of September 4, 2026;

e. an amount to be determined in additional interest on the unpaid redemption proceeds under Section 4 of the Additional Side Letter, accruing at not less than $188.09 per day on the Redemption Principal from the applicable contractual date until paid, which began as of September 4, 2026;

f. at least $2,500.00 in accounting fees incurred in connection with the default, collection of the Special Distribution, enforcement of the redemption obligation, and calculation of the amounts owed;

g. $63,020.42 in reasonable attorneys' fees incurred to date, which continue to accrue; and

h. continuing interest, attorneys' fees, costs, expenses, and all other amounts recoverable under the Additional Side Letter, the Guaranty, and applicable law.

**COUNT I (Breach of Contract and Enforcement of Guaranty)**

95. Wylie incorporates by reference paragraphs 1 through 95 as if fully set forth herein.

96. The Guaranty is a valid and enforceable contract.

97. Wylie is the beneficiary of the Guaranty.

98. Garin and Anderson executed and delivered the Guaranty in favor and for the benefit of Wylie.

99. Under the Guaranty, Garin and Anderson absolutely and unconditionally guaranteed the full, prompt, complete, and faithful payment and performance by the Company of the Guaranteed Obligations.

100. The Guaranteed Obligations include the Company's obligations to Wylie under Sections 3 and 4 of the Additional Side Letter.

101. The Company breached and defaulted on the Guaranteed Obligations by failing to pay the Special Distribution and by failing to cure that failure within the applicable cure period.

102. The Company breached and defaulted on the Guaranteed Obligations by failing to redeem the Additional Class B Units and by failing to cure that failure within the applicable cure period.

103. Wylie provided the Guarantors with an Event of Default Notice.

104. The Guarantors were required to pay the Unpaid Guaranteed Obligations and Expenses immediately upon receipt of the Event of Default Notice.

105. The Guarantors failed to pay the Unpaid Guaranteed Obligations and Expenses immediately upon receipt of the Event of Default Notice.

106. The Guarantors breached the Guaranty.

107. As a direct and proximate result of the Guarantors' breach of the Guaranty, Wylie has suffered damages in an amount to be proven at trial, but no less than $1,856,918.91 plus continuing interest, attorneys' fees, costs, Expenses, and all other amounts recoverable under the Additional Side Letter, the Guaranty, and applicable law.

108. Garin and Anderson are jointly and severally liable to Wylie for all Unpaid Guaranteed Obligations and Expenses.

**PRAYER FOR RELIEF**

WHEREFORE, Wylie respectfully requests that this Court enter judgment in favor of Wylie Holdings, L.P. and against Kristoffer A. Garin and James H. Anderson, jointly and severally, and award Wylie the following relief:

A. The unpaid Special Distribution in the amount of $475,000.00;

B. Interest on the unpaid Special Distribution at five percent (5%) per annum from March 31, 2026, until paid, accruing at $65.07 a day;

C. The redemption amount for the Additional Class B Units, including all current and carried interest associated with the Additional Class B Units;

D. The Current Preferred Return and Accrued Preferred Return associated with the Additional Class B Units, accruing at a combined rate of fifteen percent (15%) per annum, or $564.27 per day, through the date of payment;

E. Additional interest on the unpaid redemption proceeds at five percent (5%) per annum from the applicable contractual date until paid, accruing at not less than $188.09 per day on the Redemption Principal;

F. All reasonable third-party costs and expenses, including reasonable attorneys' fees, incurred by Wylie in connection with collecting the Special Distribution, including at least $2,500.00 in accounting fees and $63,020.42 in reasonable attorneys' fees, all of which continue to accrue;

G. All other expenses recoverable under the Guaranty, including court costs, continuing reasonable attorneys' fees and expenses related to the current litigation, the default, any collection efforts, and appeal costs;

H. Pre-judgment interest to the fullest extent allowed by contract and law;

I. Post-judgment interest to the fullest extent allowed by law;

J. Taxable costs; and

K. Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

CAMPBELL & LEVINE, LLC

Dated: September 10, 2026

*<u>/s/ Katherine L. Hemming</u>*
Katherine L. Hemming (DE 5496)
222 Delaware Avenue, Suite 905
Wilmington, DE 19801
Phone: (302) 426-1900
Fax: (302) 426-9947
khemming@camlev.com

-and-

Keri Ebeck (*To be admitted pro hac*)
Robert Thompson (*To be admitted pro hac*)
Metz Lewis Brodman Must O'Keefe
444 Liberty Avenue, Suite 2100
Pittsburgh, PA 15222
Phone: (412) 918-1100
Fax: (412) 918-1199
kebeck@metzlewis.com
rthompson@metzlewis.com

*Attorneys to Plaintiff*